Tiffany S. Hansen (SBN 292850)
 thansen@polsinelli.com
**POLSINELLI LLP**
Three Embarcadero Center, Suite 2400
San Francisco, CA 94111
Telephone:   (415) 248-2112
Facsimile:    (415) 248-2102

Joshua D. Arters (TN SBN 31340) (*pro hac vice forthcoming*)
 jarters@polsinelli.com
Kevin T. Elkins (TN SBN 33280) (*pro hac vice forthcoming*)
 kelkins@polsinelli.com
**POLSINELLI PC**
501 Commerce Street, Suite 1300
Nashville, Tennessee 37203
Telephone:   (615) 252-3923

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

|  |  |
|---|---|
| **SPECIALTYCARE, INC., REMOTE NEUROMONITORING PHYSICIANS, PC, and SENTIENT PHYSICIANS, PC,**<br><br>**Plaintiffs,**<br><br>v.<br><br>**KAISER FOUNDATION HEALTH PLAN, INC.,**<br><br>**Defendant.** | CASE NO. 4:24-cv-9342<br><br>**COMPLAINT AND PETITION TO CONFIRM ARBITRATION AWARD** |

Plaintiffs, SpecialtyCare, Inc., Remote Neuromonitoring Physicians, PC, and Sentient Physicians, PC (collectively, "SpecialtyCare"), bring this action against Kaiser Foundation Health Plan, Inc. ("Kaiser") and allege as follows:

## I.    INTRODUCTION

1.    This action is necessary because Kaiser has failed and/or refused to pay to SpecialtyCare the money that it was ordered to pay in arbitral awards rendered pursuant to the federal No Surprises Act ("NSA").

2.    SpecialtyCare therefore brings this action to recover $74,760 in out-of-network ("OON") reimbursement pursuant to awards issued to SpecialtyCare against Kaiser under the NSA, plus pre- and post-judgement interest and costs of collection.

3.    SpecialtyCare is recognized as a leading national healthcare provider of perfusion and intraoperative neuromonitoring throughout the United States. At all material times, Kaiser was obligated to cover and reimburse SpecialtyCare for certain OON items and services rendered to Kaiser's members and insureds under the NSA.

4.    Under the NSA, effective January 1, 2022, SpecialtyCare can dispute the amounts Kaiser paid for OON services furnished to patients enrolled in health benefit plans sold, insured, or administered by Kaiser, through an independent dispute resolution ("IDR") process administered by the Centers for Medicare & Medicaid Services ("CMS"), where a neutral known as an "IDR entity" determines the amount that Kaiser is required to pay SpecialtyCare on a particular claim for OON services.

5.    If the IDR entity determines that Kaiser underpaid SpecialtyCare, based on several factors the IDR entity considers, and awards SpecialtyCare additional amounts to ensure SpecialtyCare is fairly compensated, Kaiser is required to make the additional payments to SpecialtyCare within 30 calendar days of that decision.

42 U.S.C. § 300gg-111(b)(1)(c)[1].  The IDR entity's decision is "binding upon the parties involved" and not subject to judicial review absent circumstances described under the Federal Arbitration Act at 9 U.S.C. § 10(a)(1)-(4). *See* 42 U.S.C. §§ 300gg-111(c)(5)(E)-(F); 45 C.F.R. § 149.510(c)(4)(vii)(A).

6.    Having underpaid each of the claims at issue in this action, Kaiser forced SpecialtyCare to initiate IDR proceedings under the NSA to be fairly compensated. After the IDR entity awarded SpecialtyCare additional amounts in each of those proceedings, Kaiser failed to pay SpecialtyCare the additional amounts owed. A tabulation identifying each IDR award, including the date the award was issued, the amount of the award, any payments to date of the award, and the remaining amount Kaiser owes of the award, together aggregate of these unpaid balances of **$74,760** is attached hereto as **Exhibit A**[2].

7.    SpecialtyCare has made numerous attempts to obtain payment from Kaiser, but its attempts have been unsuccessful. No satisfactory defense or explanation has been forthcoming from Kaiser. As a result, this action is necessary so that SpecialtyCare can secure enforcement of the binding IDR awards by final judgement against Kaiser in a court of law as allowed by the NSA.

## II.    PARTIES

8.    SpecialtyCare, Inc. is a corporation organized under the laws of the State of Delaware and has its principal place of business in Brentwood, Tennessee. SpecialtyCare has two affiliated entities: Remote Neuromonitoring Physicians, PC and Sentient Physicians, PC. Remote Neuromonitoring Physicians, PC is a professional corporation organized under the laws of the State of Pennsylvania

---

[1] The relevant statutory provisions of the NSA, and its implementing regulations, are codified in three places: the Public Health Service Act ("PHS Act"), enforced by the Department of Health and Human Services ("HHS"); the Internal Revenue Code ("IRC"), enforced by the Department of the Treasury ("Treasury Department"); and the Employee Retirement Income Security Act ("ERISA"), enforced by the Department of Labor ("DOL"). For ease of reference, this Complaint cites to the PHS Act provisions and implementing regulations.

[2] Given the volume of IDR awards at issue in this matter, Plaintiffs have not attached copies of the IDR awards. However, Plaintiffs' counsel will provide Defendant's counsel with the documentation for each individual IDR award upon counsel's request and will file the IDR awards with the Court as necessary.

whose principal place of business is located in Brentwood, Tennessee. Sentient Physicians, PC is a professional corporation organized under the laws of the State of Illinois whose principal place of business is located in Brentwood, Tennessee.

9. Kaiser is a corporation organized under the laws of the State of California, with its principal place of business located in Oakland, California.

## III.    JURISDICTIONAL STATEMENT

### Jurisdiction

10. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it arises under the laws of the United States. Additionally, this Court has supplemental jurisdiction over the state-based claims because they "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).

11. This Court has personal jurisdiction over Kaiser because, among other reasons, Kaiser operates, conducts, engages in and carries on a business in California, it maintains its principal place of business and other facilities in California, and committed the acts complained of herein in California. Further, Kaiser is engaged in substantial and not isolated activity in California, both interstate and intrastate.

### Venue

12. Venue is proper in the Northern District of California pursuant to 28 U.S.C. § 1391(b)(1) because, at all times material hereto, Kaiser is a corporation conducting business in this Judicial District.

### Divisional Assignment

13. Assignment to the Oakland Division is proper. This action arises in Alameda County because a substantial part of the events giving rise to the claims set forth herein occurred in Alameda County, where Defendant Kaiser is headquartered.

100562921.3

## IV.   FACTS

14.    This dispute arises from Kaiser's failure to reimburse SpecialtyCare for healthcare services it provided to Kaiser's members, or patients who receive their insurance from self-funded ERISA plans for whom Kaiser provides administrative services.

15.    At all material times, Kaiser was obligated to cover and reimburse SpecialtyCare for certain OON items and services rendered to Kaiser's members and insureds—each of whom validly and in writing assigned his or her benefits claims to SpecialtyCare—under the federal NSA.

16.    The NSA, which became effective January 1, 2022, requires health plans and issuers, such as Kaiser, to provide coverage and reimburse providers directly for OON emergency healthcare services and non-emergency services furnished to insured patients by OON providers at participating hospitals and facilities.

17.    Under the NSA, health plans and issuers have 30 calendar days from the date the bill is transmitted by the provider to pay or deny the claim. *See* 42 U.S.C. § 300gg-111(b)(1)(c). Plans and issuers are allowed to initially pay the OON provider whatever amount they choose (or nothing at all). If the payment is too low, the provider may initiate an "open negotiation period" to negotiate a higher amount. Id. at § 300gg-111(c)(1)(A). If negotiations fail, the provider may initiate an IDR process where a third-party arbitrator, known as an IDR entity, determines the pricing on the claim(s). Id. at § 300gg-111(c)(1)(B).

18.    The IDR process requires both parties to submit to the IDR entity position statements and proposed offers of payment for the items and services at issue[3]. Id. § 300gg-111(c)(5)(B)(i)(I). The IDR entity then evaluates both proposed

---

[3] If one of the parties fails to submit an offer within the required timeframes, the IDR entity must select the other party's offer as the final award. *See* Ctrs. For Medicare & Medicaid Servs., *Federal Independent Dispute Resolution (IDR) Process Guidance for Disputing Parties* § 6.2.2, (Oct. 2022), available at https://web.archive.org/web/20230106173733/https://www.cms.gov/files/document/federal-independent-dispute-resolution-guidance-disputing-parties.pdf

offers, based on a number of statutory factors, and selects one offer as the appropriate payment for the items and services at issue, and issues its written payment determination. Id. at § 300gg-111(c)(5)(C).

19.    Any additional payment required by the IDR entity's determination must be made directly to the provider **no later than thirty (30) calendar days** after the IDR entity issues its decision. *Id.* at § 300gg-111(c)(6); see also 45 C.F.R. § 149.510(c)(4)(ix).

20.    The IDR entity's decision is "binding upon the parties involved" and not subject to judicial review absent circumstances described under the Federal Arbitration Act at 9 U.S.C. § 10(a)(1)-(4). See 42 U.S.C. §§ 300gg-111(c)(5)(E)-(F); 45 C.F.R. § 149.510(c)(4)(vii)(A).

21.    Since the implementation of the NSA, IDR entities have issued hundreds of decisions requiring Kaiser to pay SpecialtyCare additional amounts pursuant to the NSA.

22.    The IDR determinations at issue were rendered in accordance with the NSA, and are, therefore, binding upon Kaiser. *Id.* § 300gg-111(c)(5)(E)-(F);.

23.    Kaiser, however, consistently failed to remit payment pursuant to the IDR entity's determinations, resulting in **$74,760** in unpaid past due amounts owed to SpecialtyCare from Kaiser (the "Debt").

24.    Additionally, Kaiser consistently failed to make timely payment within the NSA's required 30-calendar-day payment window, which begins when the IDR entity issues a decision finding that SpecialtyCare is owed additional payment. Indeed, many payments are overdue well-beyond the 30-calendar-day payment window.

25.    SpecialtyCare has made numerous demands to Kaiser for its payment on the Debt.

26.    On multiple occasions, SpecialtyCare escalated the issue of Kaiser's failure to timely remit payment for the Debt to Kaiser and demanded payment for

the same. Although not required by the NSA, SpecialtyCare provided a spreadsheet inventory of IDR entity determinations to Kaiser to aid in the resolution of the Debt. SpecialtyCare also, from time to time, supplemented its inventory with copies of the IDR entities' determinations for each OON claim dispute at issue. Such inventory listed the following identifying information: IDR dispute number, CPT, Service Date, PCN, Payor Claim Number, Award Total, Decision Date, Expected Payment Date, Total Payments (to date), Still Owed, Patient Amount Paid.

27.    SpecialtyCare diligently followed-up with Kaiser through multiple avenues. Kaiser however, has frequently ignored SpecialtyCare's reminders for weeks at a time and has continued to not pay the Debt.

28.    Despite SpecialtyCare's efforts, Kaiser has not fully paid the Debt, and the past due amounts have continued to increase to the current amount of the Debt.

29.    SpecialtyCare engaged and continues to engage in a series of transactions in an open account with Kaiser.

30.    SpecialtyCare provided and continues to provide OON items and services to Kaiser's members and insureds, and it seeks reimbursement pursuant to the NSA, when necessary. Accordingly, SpecialtyCare also expects to enter further transactions with Kaiser that may yield future IDR entity determinations that increase the Debt.

31.    Kaiser knows that it is statutorily required to pay IDR awards within thirty days. Upon information and belief, Kaiser has not, prioritized the compliance systems and personnel needed to meet its obligations under federal law, to the detriment of SpecialtyCare and to the advantage and unjust enrichment of Kaiser, its stakeholders, it serves.

32.    Kaiser knows that the longer it delays or denies payment, the more it can earn from the interest and/or investment income generated for its fully insured business. By delaying payment or not paying IDR awards, Kaiser is able to keep the health plans' claims costs arbitrarily low, thus incentivizing plans to stay with them

100562921.3

or using the results to market their services to other health plans.

33.    Despite SpecialtyCare's numerous demands, Kaiser has failed to satisfy the Debt.

### V.    CLAIMS FOR RELIEF

### COUNT 1

### PETITION TO CONFIRM ARBITRATION AWARDS

### (9 U.S.C. § 9)

34.    SpecialtyCare incorporates the foregoing paragraphs by reference.

35.    Pursuant to 9 U.S.C. § 9, a party can petition a court to confirm an arbitration award.

36.    Federal courts have authority to confirm IDR awards issued pursuant to the NSA under 9 U.S.C. § 9. *See, e.g., GPS of New Jersey M.D., P.C. v. Horizon Blue Cross & Blue Shield*, No. CV226614KMJBC, 2023 WL 5815821 (D.N.J. Sept. 8, 2023) (granting Horizon Blue Cross & Blue Shield's cross-motion to confirm an IDR entity award under 9 U.S.C. § 9 because the language of the NSA indicates the IDR award is "final and binding" and, by invoking Section 10(a) of the Federal Arbitration Act, the NSA "gives the court the authority to confirm the award").

37.    SpecialtyCare has met all the pre-conditions for enforcement of the IDR awards at issue.

38.    Accordingly, SpecialtyCare is entitled to an Order confirming each arbitration award set forth in Exhibit A.

### COUNT 2

### ACTION FOR NONPAYMENT OF IDR DETERMINATION

### (42 U.S.C. § 300gg-111(c)(6))

39.    SpecialtyCare incorporates the foregoing paragraphs by reference.

40.    The determination of a certified IDR entity "shall be binding upon the parties involved" and that payment "shall be made directly to the nonparticipating provider or facility not later than 30 days after the date on which such determination

is made." *See* 42 U.S.C. §§ 300gg-111(c)(5)(E)(i)(I), 300gg-111(c)(6).

41.    SpecialtyCare is entitled to have the IDR determination converted into a federal judgment and enforced with the assistance of this Court in post-judgment collection efforts.

42.    SpecialtyCare is further entitled to pre-judgment interest from the 31st day after each determination date until the date judgment is entered and post-judgment interest from the date after judgment is entered until payment is satisfied by Kaiser.

43.    Accordingly, SpecialtyCare is entitled to judgement in the amount of the Debt plus pre- and post-judgement interest and the costs of collection.

## COUNT 3

### Implied Right of Action under the NSA

44.    SpecialtyCare incorporates the foregoing paragraphs by reference.

45.    The NSA includes an implied right of action against Kaiser for the amount owed to SpecialtyCare.

46.    Under the NSA, the determination of a certified IDR entity "shall be binding upon the parties involved" and that payment "shall be made directly to the nonparticipating provider or facility not later than 30 days after the date on which such determination is made." *See* 42 U.S.C. §§ 300gg-111(c)(5)(E)(i)(I), 300gg-111(c)(6).

47.    The NSA thus requires Kaiser to pay to SpecialtyCare the IDR Award Balance Owed for the services at issue in this case.

48.    Accordingly, SpecialtyCare is entitled to judgement in the amount of the Debt plus pre- and post-judgement interest and the costs of collection.

## COUNT 4

### Improper Denial of Benefits

### (ERISA Section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B))

49.    SpecialtyCare incorporates the foregoing paragraphs by reference.

100562921.3

50.    SpecialtyCare has been assigned the right to payment and benefits from Kaiser's members. This means SpecialtyCare steps into the shoes of, and is now considered, an ERISA beneficiary pursuant to 29 U.S.C. § 1002(8) for any self-funded plans Kaiser is administering. As beneficiaries, SpecialtyCare is entitled to plan benefits, is the real party in interest as to these claims and has standing to bring claims under ERISA.

51.    Kaiser improperly denied benefits by failing to pay the IDR awards within 30 days of each decision, as required by federal law. Kaiser's actions constitute an abuse of discretion by (a) not properly interpreting plan terms that are unambiguous, (b) exercising discretion over non-discretionary plan terms, and (c) denying SpecialtyCare payment and benefits under the plan terms.

52.    SpecialtyCare is entitled to recover payment of plan benefits from Kaiser pursuant to the IDR determinations

53.    Kaiser is responsible for NSA compliance for the plans it administers, including responding to IDR complaints and paying IDR awards, in connection with administering self-funded benefits plans. Kaiser breached its obligations to both the self-funded plans it administers and the plan beneficiaries by not paying IDR awards for services rendered to plan beneficiaries.

54.    Kaiser's denial of payment and benefits pursuant to the binding IDR determinations was not substantially justified, arbitrary and capricious, unsupported by substantial evidence, constituted an abuse of discretion, and wrongful under all circumstances.

55.    SpecialtyCare, as assignee, hereby asserts a claim under ERISA Section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), to recover payment of the IDR awards from the self-funded plans administered by Kaiser at issue.

56.    Pursuant to 29 U.S.C. § 1132(g), SpecialtyCare further seeks an award of reasonable attorney's fees and costs incurred in bringing this action.

57.    Accordingly, for the reasons stated above, SpecialtyCare is entitled to

100562921.3

judgement in the amount of the debt plus pre-and post-judgement interest and the costs of collection.

## COUNT 5

### ACCOUNT STATED

58.    SpecialtyCare incorporates the foregoing paragraphs by reference.

59.    Before SpecialtyCare instituted this action, the parties had business transactions between them in which they agreed on the entire amount due as the Debt.

60.    SpecialtyCare has made frequent demands to Kaiser for the above-described obligations and provided Kaiser with a statement of its balance owed on the Debt.

61.    Kaiser does not object to and has not contested the validity or quantum of the IDR entity determinations underlying the Debt.

62.    Kaiser has failed to pay SpecialtyCare $74,760 that is due on the account.

63.    Accordingly, SpecialtyCare is entitled to judgment in the amount of the Debt plus pre- and post-judgment interest and the costs of collection

## COUNT 6

### OPEN ACCOUNT

64.    SpecialtyCare incorporates the foregoing paragraphs by reference.

65.    Kaiser owes SpecialtyCare $74,760 that is due with applicable interest, in accordance with the attached statement of Kaiser's balance owed on the Debt.

66.    Accordingly, SpecialtyCare is entitled to judgement in the amount of the debt plus pre- and post-judgement interest and the costs of collection.

## COUNT 7

### BAD FAITH

67.    SpecialtyCare incorporates the foregoing paragraphs by reference.

68.    SpecialtyCare asserts a claim for bad faith in violation of California

100562921.3

1  common law.

2    69.    SpecialtyCare has been assigned the right to payment and benefits from

3  Kaiser's members. This means SpecialtyCare steps into the shoes of Kaiser's

4  members and asserts this claim as an assignee.

5    70.    SpecialtyCare made demand for payment on the Debt.

6    71.    Kaiser refused to pay the Debt after receiving SpecialtyCare's demand.

7    72.    Kaiser knew it did not have a reasonable cause to refuse payment of the

8  Debt.

9    73.    Kaiser's refusal to pay was committed in bad faith.

10    74.    Kaiser's refusal to pay has inflicted additional expense, loss, and injury,

11  including attorneys' fees and other costs incurred on SpecialtyCare to pursue

12  recovery of amounts owed.

13    75.    As a direct result of Kaiser's conduct, SpecialtyCare has been harmed.

14    76.    SpecialtyCare is entitled to recover the balance due on the Debt as well

15  as interest and its reasonable costs and attorneys' fees.

### COUNT 8

### UNJUST ENRICHMENT

18    77.    SpecialtyCare incorporates the foregoing paragraphs by reference.

19    78.    For unpaid IDR awards, Kaiser has been unjustly enriched by failing

20  and refusing to pay the amounts due and owing to SpecialtyCare for services they

21  provided to Kaiser members.

22    79.    Kaiser received a benefit by receiving premiums and other

23  consideration from the members, which in turn allowed the members to receive

24  valuable medical care from SpecialtyCare with the expectation, by both the members

25  and SpecialtyCare, that Kaiser would pay the benefits it agreed to pay in exchange

26  for the premiums and consideration provided.

27    80.    Kaiser voluntarily accepted and retained the benefit conferred.

28    81.    SpecialtyCare has been adversely impacted by providing valuable

100562921.3

treatment to the members with the expectation of payment, only to be systematically and arbitrarily denied such payment by Kaiser. In providing such care, SpecialtyCare incurred costs associated with the use and consumption of materials and supplies, expenditure of employee time and effort, and the cost of capital—all without receiving payment for its efforts, services, and investments.

82.     There is no justification for Kaiser's refusal to pay for the medical treatment provided to members, and it would be inequitable for Kaiser to retain the benefits it has received under these circumstances without paying the value thereof to SpecialtyCare in the sum of approximately $74,760.

83.     Kaiser has been, and would continue to be, unjustly enriched if allowed to retain the benefit without paying the value thereof, and SpecialtyCare has suffered damages as a result.

## COUNT 9

### Unfair Business Practices

### (Cal. Bus. & Prof. Code §§ 17200-17210)

84.     SpecialtyCare incorporates the foregoing paragraphs by reference.

85.     SpecialtyCare asserts a claim under California's Unfair Competition Law ("UCL").

86.     The purpose of the UCL is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services. To that end, the UCL takes aim at "unfair competition," a term defined to "include any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. The phrase "any unlawful . . . business act or practice" in effect "'borrows' rules set out in other laws and makes violations of those rules independently actionable." A practice may violate the UCL, however, even if not specifically proscribed by some other law.

87.     SpecialtyCare, via the UCL, has standing because it has "suffered injury in fact" and "lost money or property as a result of the unfair competition" at

issue.

88.     Kaiser has engaged and continues to engage in unfair and unlawful business practices in California by practicing, employing, and utilizing the practices outlined herein.

89.     Kaiser has engaged in conduct that violates the California Unfair Insurance Practices Act, Cal. Ins. Code §§ 790, *et seq.* ("UIPA"). Such unlawful acts or practices include, but are not necessarily limited to, knowingly: "Failing to acknowledge and act reasonably promptly upon  communications with respect to claims arising under insurance policies"; "Failing to adopt and implement reasonable standards for the prompt investigation and processing of claims arising under insurance policies;" "Failing to affirm or deny coverage of claims within a reasonable time after proof of loss requirements have been completed and submitted by the insured"; and "Not attempting in good faith to effectuate prompt, fair, and equitable settlement of claims in which liability has become reasonably clear." Cal. Ins. Code § 790.03(h).

90.     Kaiser has engaged in conduct that also violates obligations imposed by other statutes or California common law.

91.     As a result of Kaiser's conduct, SpecialtyCare has suffered an injury in fact.

92.     SpecialtyCare seeks an order awarding restitution against Kaiser for all money acquired by means of unfair competition.

## VI.    PRAYER FOR RELIEF

WHEREFORE, SpecialtyCare prays for the following relief:

A.     Judgment be entered against Kaiser on each claim asserted herein;

B.     An Order confirming each IDR award included in Exhibit A pursuant to 9 U.S.C. § 9;

C.     An Order enforcing the IDR awards and a judgment for the total amount outstanding plus pre- and post-judgment interest under 28 U.S.C. § 1961;

100562921.3

1      D.      An Order awarding SpecialtyCare its costs and reasonable attorney's

2  fees pursuant to Section 502(g)(1) of ERISA, 29 U.S.C. § 1132(g);

3      E.      An Order awarding SpecialtyCare restitution per Cal. Bus. & Prof.

4  Code §§ 17200-17210.

5      F.      Judgment be entered against Kaiser in an amount to be determined at a

6  hearing of this cause, plus any applicable interest and reasonable attorneys' fees and

7  costs; and

8      G.      For such other, further, and general relief to which SpecialtyCare may

9  show itself entitled.

10

11  Dated: December 23, 2024

12                                      Respectfully submitted,

13                                      /s/ *Tiffany Hansen*
14                                      Tiffany Hansen
15                                      Joshua D. Arters (*pro hac vice forthcoming*)
                                        Kevin T. Elkins (*pro hac vice forthcoming*)
16                                      *Counsel for Plaintiffs*

17

18

19

20

21

22

23

24

25

26

27

28

100562921.3